IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No.: 18 - CV - 274

| | |
|---|---|
| HAROLD JONES, LUIS GONZALEZ, HODGES SESSOMS, and GLENN SURLES, individually and on behalf all others similarly situated,<br><br>                              Plaintiffs,<br>           v.<br><br>CANAL WOOD, LLC, CANAL CHIP, LLC a/k/a North Carolina Chip, LLC, and CANAL HOLDINGS, LLC,<br><br>                              Defendants. | CLASS ACTION COMPLAINT |

Plaintiffs Harold Jones, Luis Gonzalez, Hodges Sessoms, and Glenn Surles, individually and on behalf of all others similarly situated (collectively "Plaintiffs" or "Participants"), by way of this Class Action Complaint complaining of Defendants Canal Wood, LLC, Canal Chip, LLC a/k/a North Carolina Chip, LLC, and Canal Holdings, LLC (collectively "Canal Wood"), allege and say:

## JURISDICTION

1)      This action arises under the Employee Retirement Income Security Act of 1974, as amended [ERISA], 29 U.S.C. §1001 et seq. Plaintiffs, as participants in The Canal Industries, Inc. Severance Benefit Plan, an ERISA regulated employee benefit plan ("Plan"), seek for themselves and for all similarly situated Plan participants, and as applicable on behalf of the Plan:

           a)      to recover benefits due, enforce their rights to benefits, and clarify their rights to benefits under the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B);

b) to pursue remedies for breach of fiduciary duty under 29 U.S.C. § 1109, pursuant to 29 U.S.C. § 1132(a)(2);

c) to enjoin further violations and obtain other appropriate equitable relief, pursuant to 29 U.S.C. §1132(a)(3); and

d) to recover their attorneys' fees and costs, pursuant to 29 U.S.C §1132(g).

2) Jurisdiction of this Court arises under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1).

3) Venue is proper in this district under 29 U.S.C. § 1132(e)(2) where one or more defendants may be found.

4) Contemporaneous with the filing of this Class Action Complaint, Plaintiffs serve the United States Secretary of Labor and the United States Secretary of the Treasury by certified mail as required by 29 U.S.C. §1132(h).

## PARTIES

5) Plaintiff Harold Jones is a citizen and resident of Wilson County, North Carolina, a former employee of Canal Wood employed in its wood-chipping operations in Wilson County, North Carolina ("NC Chip Mill"), and a participant in the Plan.

6) Plaintiff Luis Gonzalez is a citizen and resident of Nash County, North Carolina, a former employee of Canal Wood at NC Chip Mill, and a participant in the Plan.

7) Plaintiff Hodges Sessoms is a citizen and resident of Wilson County, North Carolina, a former employee of Canal Wood at NC Chip Mill, and a participant in the Plan.

8) Plaintiff Glenn Surles is a citizen and resident of Johnston County, North Carolina, a former employee of Canal Wood at NC Chip Mill, and a participant in the Plan.

9) Defendant Canal Wood, LLC is a Delaware limited liability company authorized to transact business in the State of North Carolina with a principal office and place of business at 2430 Main Street, Conway, South Carolina, with corporate offices in North Carolina, South Carolina, and Georgia, and with field offices in Alabama, Georgia, Florida, North Carolina, South Carolina, Tennessee, and Virginia, from which it engages in business throughout the southeastern United States specializing in timber management, harvesting, marketing, sales and transportation. Canal Wood, LLC is the successor in interest of Canal Wood Corporation and Canal Industries, Inc. and a Plan Sponsor and fiduciary for the Plan.

10) Defendant Canal Chip, LLC is a single member Delaware limited liability company authorized to transact business in the State of North Carolina under the style and name North Carolina Chip, LLC with a principal office and place of business at 4311-D Ludgate Street, Lumberton, North Carolina, which engages in business in the State of North Carolina, among others, specializing in the production of wood chips. Canal Chip, LLC is a successor in interest of Canal Chip Corporation, North Carolina Chip Company, Canal Industries, Inc., and Canal Wood, LLC, and a Plan Sponsor and fiduciary for the Plan. Defendant Canal Wood, LLC is the sole member of Canal Chip, LLC.

11) Canal Holdings, LLC, is a South Carolina limited liability company with a designated office address of 5616 Country Club Drive, Myrtle Beach, Horry County and successor by merger to Canal Industries, Inc. and to all or part of the Canal Family of Companies, including Canal Industries, Inc., any other trade or business that together with Canal Industries, Inc. was treated as a single employer pursuant to Sections 414 (b), (c), (m), (n), or (o) of the Internal Revenue Code of 1986, as amended, including but not limited to Canal Wood Corporation, Canal Chip Corporation, Canal Forest Resources, Inc., Morehead City Terminals, Inc., Carolina Rail

3

Service, Inc., Canal Land Investors, Inc., North Carolina Chip Company, Cadron Creek Fibre Corporation, and Missouri Fibre Corporation. Canal Holdings, LLC is a Plan Sponsor and fiduciary for the Plan.

## **FACTS**

12) Throughout the 1990s and up to and including March 30, 2001, Plaintiffs were employed at NC Chip Mill and paid by Canal Industries, Inc. from its central office located in Conway, South Carolina.

13) Throughout the 1990s and prior to May 22, 2000, employees of Canal Industries, including Plaintiffs, were offered severance benefits described in the Canal Industries, Inc. Employee Handbook as follows:

> Canal Industries, Inc. offers severance pay for all executive and non-executive positions during the times of *job elimination or layoffs*. For non-executive management positions the company will grant one week of pay for every full year of employment up to a maximum of 26 weeks. If the employee has worked for the company for less than 4 years, a minimum of four weeks' pay will be granted.

14) Prior to May 22, 2000, Canal Industries, Inc. did not modify, revoke, suspend, terminate, or change its severance benefits program described in the Canal Industries Employee Handbook.

15) Effective May 22, 2000, Canal Industries, Inc. adopted the Plan as an employee benefit plan regulated by ERISA to govern all payments made to eligible employees in the Canal Family of Companies, including Plaintiffs, upon their separation from employment including their separation due to job elimination or lay off. A true and accurate copy of the Plan and its Summary Plan Description is appended hereto as Exhibit A and incorporated herein by reference.

16) By its terms, the Plan superseded all other policies, practices, procedures and plans relating to severance benefits whether known as severance pay, separation pay, termination pay,

notice pay, layoff allowance, supplemental unemployment benefits, plant closing benefits, or the like.

17) The Plan was established as a part of an aggressive restructuring of the Canal Family of Companies to provide enhanced severance benefits to employees displaced by reorganization and to avoid triggering claims for payment of severance benefits to employees retained by the successor Canal entities, including defendants.

18) Under the terms of the Plan, employees involuntarily terminated are entitled to severance benefits except when:

    a) employment terminates because of death;

    b) employment terminates by reason of a failure to return to work following leave;

    c) an offer is received by an employer that merged with or bought the stock or substantially all of the assets of Canal Industries;

    d) hired by a company that is majority owned by one or more individuals, trusts, or estates that owned stock in Canal Industries on the date the Plan was established; or

    e) employment terminates for Cause.

19) Under the terms of the Plan, Basic Severance Pay, consistent with the prior severance benefit program described in the Canal Industries Employee Handbook, is one weeks' pay for every full year of employment up to a maximum of 26 weeks with a minimum benefit of four weeks' pay, and Enhanced Severance Benefits are made available to employees selected by the Plan Administrator to receive additional benefits on an individual basis.

20) The Plan Administrator for the Plan is the Senior Vice President of Human Resources of Canal Industries who has discretionary authority to determine who shall be eligible

for benefits, to interpret the terms of the Plan, to prescribe, amend and rescind rules and regulations relating to the Plan, and to make all other determinations necessary or advisable for the administration of the Plan.

21) All questions whatsoever arising in connection with the interpretation of the Plan or its administration are required by the terms of the Plan to be submitted to the Plan Administrator.

22) The Plan Administrator has full authority to modify, amend, or terminate the Plan.

23) Since May 22, 2000, the Plan has not been modified, amended, or terminated.

24) On or about November 8, 2000, Canal Wood, LLC, under its prior name Canal Acquisitions, LLC, acquired the assets of Canal Wood Corporation and offered employment to and hired employees who are Participants in the Plan. Canal Acquisitions, LLC was renamed Canal Wood, LLC on or about January 25, 2001.

25) On or about April 30, 2001, Canal Wood LLC acquired the assets of the North Carolina Chip Company and offered employment to and hired employees who are Participants in the Plan, including Plaintiffs.

26) Consistent with ERISA § 1060(b), employees hired by Canal Wood were credited with prior years of service for the Canal Family of Companies for length of service requirements under the Plan.

27) In employee meetings held at NC Chip Mill both before and after April 30, 2001, Plaintiffs were informed that no changes were being made as a result of the restructuring, that it was only a company name change, and that all operations and employment would continue as before at the same location and they would receive the same pay and benefits. Plaintiffs are informed and believe that these meetings were held at other Canal Wood locations throughout the southeastern United States.

28) Consistent with the information provided to Plaintiffs in employee meetings, the only change after April 30, 2001 was they were paid by "Canal Wood" rather than by "Canal Industries." Both before and after April 30, 2001, Plaintiffs paychecks were issued from defendants' centralized location in Conway, South Carolina.

29) On September 1, 2016, a fire destroyed NC Chip Mill.

30) As a result of the fire, Canal Wood ceased all operations at NC Chip Mill and terminated its employees employed at NC Chip Mill, including Plaintiffs.

31) Following their termination, Plaintiffs submitted claims for severance benefits.

32) In response to Plaintiffs claims, Canal Wood denied and continues to deny the existence of the Plan and refused and continues to refuse to consider or administer Plaintiffs claims for severance benefits under the Plan.

### FACTUAL BACKGROUND AS TO PLAINTIFF HAROLD JONES

33) Harold Jones was employed by Canal Industries on March 5, 1991 for its operations at NC Chip Mill, and remained continuously employed at NC Chip Mill up to November 15, 2016 when he was involuntarily terminated by Canal Wood as a result of the fire.

34) Harold Jones is an Eligible Employee under and Participant in the Plan and has been a Participant in the Plan since May 22, 2000.

35) Since May 22, 2000, the Plan has not been modified, amended, or terminated.

36) Harold Jones submitted a claim for benefits under the Plan.

37) Canal Wood has refused to accept or administer his claim under the Plan and denies the existence of the Plan, thereby rejecting and making futile any requirement to exhaust the administrative processes for claims and appeal under the terms of the Plan.

38) Administration of Harold Jones' claim under the terms of the Plan would reveal:

a) At the time of his termination on November 15, 2016, he had twenty-five (25) years of service and was paid $560 per week;

b) He was not terminated by reason of his death, by reason of his refusal to return from leave, or for Cause as defined by the Plan;

c) He has not been offered employment by an employer that merged with or bought the stock or substantially all of the assets of Canal Wood, or by an employer that is majority owned by one or more individuals, trusts, or estates that owned stock in Canal Industries on May 22, 2000.

39) Under the terms of the Plan, Harold Jones, at the time of his termination on November 15, 2016, qualified for and is entitled to benefits under the Plan in an amount equal to one week of pay for each year of service up to a maximum amount equal to 25 weeks of pay, or $560 per week multiplied by 25 weeks, which is $14,000.00.

## FACTUAL BACKGROUND AS TO PLAINTIFF LUIS GONZALEZ

40) Luis Gonzalez was employed by Canal Industries on December 7, 1998 for its operations at NC Chip Mill, and except for a brief period sometime between 1999 and 2001 remained continuously employed at NC Chip Mill up to September 30, 2016 when he was involuntarily terminated by Canal Wood as a result of the fire.

41) Luis Gonzalez is an Eligible Employee under and Participant in the Plan and has been a Participant in the Plan since May 22, 2000.

42) Since May 22, 2000, the Plan has not been modified, amended, or terminated.

43) Luis Gonzalez submitted a claim for benefits under the Plan.

44) Canal Wood has refused to accept or administer his claim under the Plan and denies the existence of the Plan, thereby rejecting and making futile any requirement to exhaust the administrative processes for claims and appeal under the terms of the Plan.

45) Administration of Luis Gonzalez's claim under the terms of the Plan would reveal:

a) At the time of his termination on September 30, 2016, he had seventeen (17) years of service and was paid $360 per week;

b) He was not terminated by reason of his death, by reason of his refusal to return from leave, or for Cause as defined by the Plan;

c) He has not been offered employment by an employer that merged with or bought the stock or substantially all of the assets of Canal Wood, or by an employer that is majority owned by one or more individuals, trusts, or estates that owned stock in Canal Industries on May 22, 2000.

46) Under the terms of the Plan, Luis Gonzalez, at the time of his termination on September 30, 2016, qualified for and is entitled to benefits under the Plan in an amount equal to one week of pay for each year of service up to a maximum amount equal to 17 weeks of pay, or $360 per week multiplied by 17 weeks, which is $6,120.00.

**FACTUAL BACKGROUND AS TO PLAINTIFF HODGES SESSOMS**

47) Hodges Sessoms was employed by Canal Industries on October 27, 1997 for its operations at NC Chip Mill, and remained continuously employed at NC Chip Mill up to November 15, 2016 when he was involuntarily terminated by Canal Wood as a result of the fire.

48) Hodges Sessoms is an Eligible Employee under and Participant in the Plan and has been a Participant in the Plan since May 22, 2000.

49) Since May 22, 2000, the Plan has not been modified, amended, or terminated.

50) Hodges Sessoms submitted a claim for benefits under the Plan.

51) Canal Wood has refused to accept or administer his claim under the Plan and denies the existence of the Plan, thereby rejecting and making futile any requirement to exhaust the administrative processes for claims and appeal under the terms of the Plan.

52) Administration of Hodges Sessoms's claim under the terms of the Plan would reveal:

a) At the time of his termination on September 30, 2016, he had nineteen (19) years of service and was paid $372 per week;

b) He was not terminated by reason of his death, by reason of his refusal to return from leave, or for Cause as defined by the Plan;

c) He has not been offered employment by an employer that merged with or bought the stock or substantially all of the assets of Canal Wood, or by an employer that is majority owned by one or more individuals, trusts, or estates that owned stock in Canal Industries on May 22, 2000.

53) Under the terms of the Plan, Hodges Sessoms, at the time of his termination on November 15, 2016, qualified for and is entitled to benefits under the Plan in an amount equal to one week of pay for each year of service up to a maximum amount equal to 19 weeks of pay, or $372 per week multiplied by 19 weeks, which is $7,068.00.

**FACTUAL BACKGROUND AS TO PLAINTIFF GLENN SURLES**

54) Glenn Surles was employed by Canal Industries on March 19, 1990 for its operations at NC Chip Mill, and remained continuously employed at NC Chip Mill up to November 15, 2016 when he was involuntarily terminated by Canal Wood as a result of the fire.

55) Glenn Surles is an Eligible Employee under and Participant in the Plan and has been a Participant in the Plan since May 22, 2000.

56) Since May 22, 2000, the Plan has not been modified, amended, or terminated.

57) Glenn Surles submitted a claim for benefits under the Plan.

58) Canal Wood has refused to accept or administer his claim under the Plan and denies the existence of the Plan, thereby rejecting and making futile any requirement to exhaust the administrative processes for claims and appeal under the terms of the Plan.

59) Administration of Glen Surles's claim under the terms of the Plan would reveal:

　a) At the time of his termination on November 15, 2016, he had twenty-six (26) years of service and was paid $545 per week;

　b) He was not terminated by reason of his death, by reason of his refusal to return from leave, or for Cause as defined by the Plan;

　c) He has not been offered employment by an employer that merged with or bought the stock or substantially all of the assets of Canal Wood, or by an employer that is majority owned by one or more individuals, trusts, or estates that owned stock in Canal Industries on May 22, 2000.

60) Under the terms of the Plan, Glenn Surles, at the time of his termination on November 15, 2016, qualified for and is entitled to benefits under the Plan in an amount equal to one week of pay for each year of service up to a maximum amount equal to 26 weeks of pay, or $545 per week multiplied by 26 weeks, which is $14,170.00.

## CLASS ACTION ALLEGATIONS

61) Plaintiffs bring this action on their own behalf and as a Class Action pursuant to Rules 23(b)(1) and 23(b)(2) or in the alternative 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed "Class" or "Class Members:"

> All Participants in The Canal Industries, Inc. Severance Benefit Plan whose employment was involuntarily terminated after May 22, 2000.

Upon completion of discovery with respect to the scope of the Class, Plaintiffs reserve the right to amend the Class definition. The foregoing Class Members do not include Defendants, the Plan Administrator, their parents, subsidiaries and affiliates.

62) **Numerosity**: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiffs at this time, the size of the Class is estimated to be more than 100 participants and may be as many as 300 or more. Class Members can be notified of this class action via publication and U.S. mail, at addresses which Defendants have in their business records or records in their possession, custody or control.

63) **Commonality**: There are questions of law or fact common to members of the Class that predominate over any questions affecting any individual members including, inter alia:

   i. Whether the Plan was modified, amended, or terminated by the Plan Administrator after May 22, 2000;

   ii. Whether Canal Wood wrongfully denies the existence of the Plan;

   iii. Whether Canal Wood wrongfully fails to submit claims for severance benefits to the Plan Administrator;

   iv. Whether Canal Wood wrongfully refuses to allow the administration of claims under the Plan;

    v. Whether Canal Wood employees involuntarily terminated after May 22, 2000 are entitled to submit claims for severance benefits under the Plan;

    vi. Whether Canal Wood employees involuntarily terminated after May 22, 2000 are entitled to have their claims administered by the Plan Administrator;

    vii. Whether Canal Wood breached a fiduciary duty to the Plan Participants and their beneficiaries by failing to administer the Plan in accordance with its terms;

    viii. Whether Canal Wood discharged its duties with respect to the Plan in accordance with the documents and instruments governing the plan;

    ix. Whether Canal Wood breached its duty to the Plan, its Participants and beneficiaries, by failing to administer the Plan for the exclusive purpose of providing severance benefits to the Participants;

    x. Whether Canal Wood discharged its duties with respect to the Plan with the care, skill, prudence, and diligence required by the circumstances;

    xi. Whether Canal Wood and the Plan Administrator should be required to administer claims under the Plan; and

    xii. Whether Canal Wood is liable for Plaintiffs' and Class Members' attorneys' fees.

64) **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs allege a common course of conduct by Defendants towards members of the Class. Plaintiffs, like other members of the Class, were Participants in the Plan and upon an involuntary termination of employment, were entitled to submit their claims for severance benefits under the Plan and to have their claims administered in accordance with the terms of the Plan and ERISA. Plaintiffs and the other members of the Class seek identical remedies under identical legal

theories, and there is no antagonism or material factual variation between Plaintiffs' claims and those of the Class.

65) **<u>Adequacy</u>**: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiffs have retained competent counsel experienced in litigation of this nature.

66) Class certification is warranted under Rule 23(b)(1) because separate individual actions by Participants would create a risk of inconsistent and varying adjudications establishing incompatible standards of conduct for Defendants, as well as a risk of adjudications in individual Participant cases that, as a practical matter, would be dispositive of the interests of Participants not parties to individual cases and would substantially impair or impede the ability of Participants not parties to the individual cases to protect their interests.

67) Class certification is further warranted under Rule 23(b)(2) because Plaintiffs seek declaratory and injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class to recover benefits, enforce their rights to benefits, or clarify their rights to future benefits and declaratory and injunctive relief for administration of claims of entitlement to severance benefits under the terms of the Plan (29 U.S.C. § 1132(a)(1)(B)), to pursue remedies for breach of fiduciary duty under 29 U.S.C. § 1109 (29 U.S.C. §1132(a)(2)), to enjoin further violations and obtain other appropriate equitable relief to redress violations (29 U.S.C. §1132(a)(3)), and to recover their attorneys' fees and costs (29 U.S.C §1132(g)).

68) As an alternative to or in addition to certification of the Class under Rule 23(b)(1) or (2), class certification is warranted under Rule 23(b)(3) because common questions of law or fact going to Defendants' obligations with respect to the Plan predominate over individual

14

questions of law and fact, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

69) The predominant legal issue in this action is whether Defendants have failed to administer the Plan as required by its terms and ERISA. By litigating this issue, Plaintiffs necessarily will establish Defendants' obligations to all Class Members.

70) A class action is superior because it makes no sense for court after court to hear essentially the same claims and evidence relating to whether Defendants' acts violate the terms of the Plan and ERISA. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude their maintenance as a class action.

71) Class action treatment will permit a large number of similarly-situated persons to obtain relief for their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

## CAUSES OF ACTION
### COUNT I
### (Enforcement and Clarification of Rights, 29 U.S.C. § 1132(a)(1)(B))

72) Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth.

73) Plaintiffs and all other Participants in the Plan who suffered an involuntary termination of employment from and after May 22, 2000 have been denied their rights to submit their claims for severance benefits under the Plan and to have their claims administered by the Plan Administrator in accordance with the terms of the Plan.

74) Canal Wood has wrongfully denied the existence of the Plan.

75) Canal Wood has failed and refused to notify Participants of their rights under the Plan and their rights to submit claims for severance benefits under the Plan.

76) Canal Wood has failed and refused to allow Participants to submit their claims for severance benefits under the Plan and has rejected submitted claims.

77) Canal Wood has failed and refused to administer claims under the Plan in accordance with the terms of the Plan.

78) Plaintiffs, individually and on behalf of all Plan Participants similarly situated request the Court to enforce and to clarify their rights to severance benefits under the Plan.

79) In addition, Plaintiffs, individually and on behalf of all Plan Participants, request declaratory and injunctive relief requiring Canal Wood to identify all Participants, notify them of their rights to submit claims for severance benefits under the Plan, and to receive and administer their claims in accordance with the terms of the Plan.

## COUNT II
### (Breach of Fiduciary Duties, 29 U.S.C. §1132(a)(2))

80) Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth.

81) Each of the Defendants are fiduciaries with respect to the Plan having obligations to discharge their duties to the Plan and its Participants solely in the interest of the Participants, for the exclusive purpose of providing benefits to the Participants, with care, skill, prudence and diligence, and in accordance with the documents and instruments governing the Plan.

82) Defendants breached their duties to the Plan and its Participants in one or more of the following respects, to wit:

   a) By failing to acknowledge the existence of the Plan, having neither modified, amended, nor terminated the Plan in accordance with its terms;

   b) By failing to notify Participants of their rights under the Plan;

   c) By rejecting and failing to administer claims for benefits under the Plan in accordance with its terms;

    d) By failing to administer the Plan for the exclusive purpose of providing severance benefits to the Participants;

    e) By failing to discharge its duties with respect to the Plan in accordance with the documents and instruments governing the plan; and

    f) By failing to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence required by the circumstances.

83) Defendants' breach is a breach of fiduciary duty as defined by ERISA, 29 U.S.C. §§ 1102 & 1104.

84) As a result of Defendants' breach, Plaintiffs and other Participants and their beneficiaries who qualify for benefits under the terms of the Plan have suffered loss of entitlement to severance benefits, (*i.e.* the greater of one week of pay per year of service up to 26 weeks of pay, or 4 weeks' pay).

85) Pursuant to 29 U.S.C. § 1109(a), Defendants are jointly and severally obligated to notify employees of their rights under the Plan, to appoint a Plan Administrator to receive and administer claims under the Plan, to facilitate submission of claims by its Participants and their beneficiaries, to administer and pay severance benefits in accordance with the terms of the Plan, and to make good the severance benefits offered to Participants under the terms of the Plan.

## COUNT III
### (Injunctive and Other Equitable Relief, 29 U.S.C. §1132(a)(3))

86) Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth.

87) Defendants have failed and refused to administer the Plan as required by its terms and ERISA.

88) Plaintiffs, for themselves and for the benefit of all Plan Participants, are entitled to entry of an order enjoining and restraining further violations of the terms of the Plan and ERISA,

17

Case 5:18-cv-00274-FL   Document 1   Filed 06/13/18   Page 17 of 20

and to other equitable relief as may be necessary or required to enforce the terms of the Plan and ERISA.

## COUNT IV
### (Attorneys' Fees, 29 U.S.C. §1132(g))

89) Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth.

90) Under 29 U.S.C. § 1132(g)(1), this Court may in its discretion award reasonable attorneys' fees and costs.

91) Plaintiffs are informed and believe the acts and conduct of the Defendants herein set forth and the consequences to Plaintiffs and the Plan Participants justifies the exercise of discretion in favor of allowing Plaintiffs to recover from Defendants their attorneys' fees and costs incurred in the pursuit of this action.

WHEREFORE, Plaintiffs pray for judgment on behalf of themselves and on behalf of the Class Members defined above, as follows:

1) Certifying a Class pursuant to Rules 23(b)(1) and (b)(2), Fed. R. Civ. P., or in the alternative pursuant to Rule 23(b)(3), Fed. R. Civ. P., appointing Plaintiffs as representatives for the Class Members and Plaintiffs' counsel as Class Counsel;

2) Declaring and determining the existence of the Plan;

3) Enforcing and clarifying the rights of the Participants and beneficiaries under the Plan;

4) Directing Defendants, jointly and severally, to identify all Participants and beneficiaries of the Plan, to notify them of their rights under the Plan, to receive and administer claims for benefits under the Plan in accordance with its terms, and to pay severance benefits to Participants and their beneficiaries who qualify for severance benefits under the terms of the Plan, together with interest thereon from the date of their entitlement to the date of payment;

92) Appointing an independent, substitute Plan Administrator to supervise notice to all Participants and beneficiaries, to receive and administer claims under the Plan, and to authorize and direct the payment of claims by Canal Wood under the Plan, with plenary authority to determine who shall be eligible for benefits in accordance with the terms of the Plan, to interpret the terms of the Plan, to prescribe, amend and rescind rules and regulations relating to the Plan, and to make all other determinations necessary or advisable for the administration of claims under the Plan.

5) Enjoining and Restraining Defendants from continuing and further violations of the terms of the Plan and ERISA;

6) For such other equitable relief as may be necessary or required to enforce the terms of the Plan and ERISA;

7) Awarding reasonable costs and attorneys' fees to Plaintiffs and their counsel;

8) Awarding such other relief as the Court may deem just and proper.

This the 13th day of June, 2018.

*Attorneys for Plaintiffs*

/s/ Wm. Joseph Austin, Jr.
Wm. Joseph Austin, Jr., Of Counsel
N. C. State Bar No. 8158
jaustin@nowlaw.com
NARRON, O'HALE, AND WHITTINGTON, P.A.
2626 Glenwood Avenue, Suite 485
Raleigh, North Carolina 27608
Telephone (919) 977-8018
Facsimile (919)


/s/ Stephen A. Dunn
Stephen A. Dunn
N. C. State Bar No. 12389
sdunn@emanuelanddunn.com

/s/ S. Michael Dunn
S. Michael Dunn
N. C. State Bar No. 47713
mdunn@emanuelanddunn.com
EMANUEL & DUNN
Post Office Box 426
Raleigh, North Carolina 27602
Telephone (919) 832-0329
Facsimile (919) 832-6731