IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-274-FL

|  |  |  |
|---|---|---|
| HAROLD JONES, LUIS GONZALEZ, HODGES SESSOMS, and GLENN SURLES, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| CANAL WOOD, LLC; CANAL CHIP, LLC also known as North Carolina Chip, LLC; and CANAL HOLDINGS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants' motions to dismiss for failure to state a claim (DE 23, 25). Plaintiffs responded in opposition and defendants replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted.

## STATEMENT OF THE CASE

This action arises out of the closing of a wood-chipping plant in Wilson County, North Carolina (the "NC Chip Mill"). Plaintiffs are former workers at the NC Chip Mill who claim defendants owe them severance benefits and other relief under an employee benefit plan pursuant to the Employee Retirement Income Security Act (ERISA).

Plaintiffs filed a putative class action complaint on June 13, 2018, on behalf of themselves and all others similarly situated, attaching and relying upon a document titled "The Canal Industries, Inc. Severance Benefit Plan" (the "Plan"), and seeking the following relief:

1) "[T]o recover benefits due, enforce their rights to benefits, and clarify their rights to benefits under the Plan," pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B);

2) "[T]o pursue remedies for breach of fiduciary duty" under ERISA, 29 U.S.C. § 1109, pursuant to 29 U.S.C. § 1132(a)(2);

3) "[T]o enjoin further violations and obtain other appropriate equitable relief," pursuant to ERISA, 29 U.S.C. §1132(a)(3); and

4) "[T]o recover attorneys' fees and costs," pursuant to ERISA, 29 U.S.C. § 1132(g).

(Compl. ¶1).

Plaintiffs assert that defendants are "successor[s]" to non-party Canal Industries, Inc., (id. ¶¶ 9-11), and that they are related to Canal Industries, Inc., in such manner as to subject them to liability to plaintiffs under the Plan, which relationships the court discusses in further detail herein.

Defendant Canal Holdings, LLC, filed the instant motion to dismiss for failure to state a claim on August 28, 2018, pursuant to Federal Rule of Civil Procedure 12(b)(6), relying in part upon articles of merger filed with the South Carolina Secretary of State. On the same date defendants Canal Wood, LLC, and Canal Chip, LLC, filed their motion to dismiss, relying upon the following documents:

1) Affidavit of Cheryl Bradford, a human resources manager for defendant Canal Wood, LLC;

2) "Asset Purchase Agreement" by and between non-party North Carolina Chip Company, non-party Canal Industries, Inc., and defendant Canal Wood, LLC, dated April 30, 2001 ("NC Chip APA");

3) "Articles of Merger of Domestic and Foreign Corporations into [non-party] Canal

Wood Corporation";

4)      State of South Carolina, Secretary of State, "Articles of Organization Limited Liability Company";

5)      State of Delaware, Secretary of State, "Certificate of Formation of [non-party] Canal Acquisition, LLC";

6)      State of Delaware, Secretary of State, "Certificate of Formation of [defendant] Canal Chip, LLC";

7)      "Annual Return/Report of Employee Benefit Plan"; and

8)      Department of the Treasury, Internal Revenue Service 2016 "Instructions for Form 5500."

Plaintiffs responded in opposition to the motions to dismiss on October 12, 2018, stating in part that if the court considers the documents attached to the motion to dismiss by defendants Canal Wood, LLC, and Canal Chip, LLC, then the court should convert the motion to one for summary judgment and also consider the following documents in opposition thereto, attached to plaintiffs' response:

1)      "North Carolina General Warranty Deed" between non-parties Canal Industries, Inc., and North Carolina Chip Company;

2)      Plaintiffs' declarations;

3)      Declaration of William Joseph Austin, Jr., attorney for plaintiffs, attaching additional exhibits including correspondence, memoranda, and corporate documents.

On November 2, 2018, defendants Canal Wood, LLC, and Canal Chip, LLC, filed a document comprising: 1) a response and objection to plaintiffs' request to convert the motion to

dismiss to one for summary judgment, and 2) objection to certain exhibits attached to plaintiffs' opposition. Defendants also filed on the same date replies in support of their motions to dismiss. On November 20, 2018, plaintiffs responded to the response and objections by defendants Canal Wood, LLC, and Canal Chip, LLC.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows.[1] Throughout the 1990s and up to and including March 30, 2001, plaintiffs were employed at NC Chip Mill and paid by non-party Canal Industries, Inc., from its central office located in Conway, South Carolina. During that time, plaintiffs were offered severance benefits described in the Canal Industries, Inc., Employee Handbook as follows:

> [Non-party] Canal Industries, Inc. offers severance pay for all executive and non-executive positions during the times of job elimination or layoffs. For non-executive management positions the company will grant one week of pay for every full year of employment up to a maximum of 26 weeks. If the employee has worked for the company for less than 4 years, a minimum of four weeks' pay will be granted.

(Compl. ¶ 13).

Effective May 22, 2000, non-party Canal Industries, Inc., adopted the Plan, which by its terms "govern[s] all payments made to 'Eligible Employees' as defined [therein] on account of separation from employment, including separation that may occur due to job elimination or lay off." (Plan "Preliminary Statement" (DE 1-1 at 12)). Key terms of the Plan, as pertinent to the instant motions are as follows.

The Plan provides generally an entitlement to severance benefits, in that an "<u>Eligible</u>

---

[1] The court sets forth in the analysis herein its reasons for not considering upon the instant motions documents attached to the motions to dismiss and opposition thereto.

Employee shall be entitled to a benefit, payable as set forth [in the Plan], in a total amount equal to his or her Basic Severance Pay as calculated [in the Plan], provided that he or she incurs an involuntary termination of employment with a Participating Employer." (Plan § 2.1).[2]  The plan provides an exclusion in the following circumstance, as pertinent here:

> 2.4    In the event of the "Sale of the Employer" (as defined in this Section 2.4) by which the Employee is employed, benefits shall not be paid, and if payment of Severance Pay has commenced, such payment shall be discontinued immediately, in the case of any Eligible Employee who is:
>
> (a)    employed in any position by the purchaser or surviving business; [or]
>
> (b)    offered any comparable position by the purchaser or surviving business . . . where the workplace is not changed . . . .
>
> A "Sale of the Employer" means a sale of all or part of the employer by which the Eligible Employee is employed, or any facility in which the Eligible Employee works, whether by the sale of stock or assets, as well as a merger or consolidation of all or part of the employer in which the Eligible Employee works with another corporation.

(Id. § 2.4).

The term "Eligible Employee" means "a person who, immediately prior to his Severance of Employment: . . . was employed as an employee[] by a Participating Employer. . . ." (Id. § 1.6).  The term "Severance of Employment" means "any involuntary termination of employment by an Eligible Employee with a Participating Employer, other than a termination for Cause. . . ." (Id. § 1.13).  The term "Participating Employer" means "the Company and any other employer in the Canal Family of Companies that adopts this Plan." (Id. § 1.10).  The term "Company" means non-party Canal Industries, Inc. (Id. § 1.5).  The term "Canal Family Companies" is defined as follows:

---

[2] Capitalized terms underlined throughout this order are defined in the Plan and as set forth in pertinent part in the text above.  In this order, the court designates emphasis added by italics.

> 1.2 **"Canal Family of Companies"** means the Company; any corporation, and any other trade or business, that together with the Company is treated, or has been treated within one year of an Eligible Employee's Severance of Employment, as a single employer pursuant to Sections 414(b), (c), (m), or (o) of the Internal Revenue Code of 1986, as amended; and, to the extent not otherwise included, the following corporations: Canal Wood Corporation; Canal Chip Corporation; Canal Forest Resources, Inc; Morehead City Terminals, Inc.; Carolina Rail Service, Inc.; Canal Land Investors, Inc.; North Carolina Chip Company; Cadron Creek Fibre Corporation; and Missouri Fibre Corporation.

(Id. § 1.2).

According to the complaint, "[t]he Plan was established as a part of an aggressive restructuring of the Canal Family of Companies to provide enhanced severance benefits to employees displaced by reorganization and to avoid triggering claims for payment of severance benefits to employees retained by the successor Canal entities, including defendants." (Compl. ¶ 17). Plaintiffs assert that defendant Canal Holdings, LLC, is a "successor by merger to Canal Industries, Inc. and to all or part of the Canal Family of Companies" as that term is defined in the Plan. (Id. ¶ 11).

On November 8, 2000, less than six months after the Plan was adopted, defendant "Canal Wood, LLC, under its prior name Canal Acquisitions, LLC, acquired the assets of [non-party] Canal Wood Corporation and offered employment to and hired employees who are Participants in the Plan." (Id. ¶ 24).[3]  "Canal Acquisitions, LLC was renamed [defendant] Canal Wood, LLC on or about January 25, 2001." (Id.).  On April 30, 2001, "defendant Canal Wood LLC acquired the assets of [non-party] North Carolina Chip Company and offered employment to and hired employees who are Participants in the Plan, including Plaintiffs."  (Id. ¶ 25).

According to plaintiffs, "[i]n employee meetings held at NC Chip Mill both before and after April 30, 2001, Plaintiffs were informed that no changes were being made as a result of the

---

[3] The word "Participants" is not a defined term in the Plan.

restructuring, that it was only a company name change, and that all operations and employment would continue as before at the same location and they would receive the same pay and benefits." (Id. ¶ 27). "Consistent with the information provided to Plaintiffs in employee meetings, the only change after April 30, 2001 was they were paid by 'Canal Wood' rather than by 'Canal Industries.'" (Id. ¶ 28). Plaintiffs continued to be paid by "Canal Wood" in this manner into 2016, by "paychecks . . . issued from defendants' centralized location in Conway, South Carolina." (Id.).

On September 1, 2016, "a fire destroyed NC Chip Mill." (Id. ¶ 29). "As a result of the fire, Canal Wood[4] ceased all operations at NC Chip Mill and terminated its employees employed at NC Chip Mill, including Plaintiffs." (Id. ¶ 30). "Following their termination, Plaintiffs submitted claims for severance benefits." (Id. ¶ 31).[5] According to the complaint, "[i]n response to Plaintiffs['] claims, Canal Wood[4] denied and continues to deny the existence of the Plan and refused and continues to refuse to consider or administer Plaintiffs['] claims for severance benefits under the Plan." (Id. ¶ 32).

Plaintiffs allege that under the terms of the Plan, plaintiffs qualify for severance benefits as follows: for plaintiff Harold Jones, an amount equal to 25 weeks of pay, or $14,000.00; for plaintiff Luis Gonzalez, 17 weeks of pay, or $6,120.00; for plaintiff Hodges Sessoms, 19 weeks of pay, or $7,068.00; and for plaintiff Glenn Surles, 26 weeks of pay, or $14,170.00. (Id. ¶¶ 39, 46, 53, 60).

---

[4] Plaintiffs specify in the introduction of the complaint that they refer to all defendants in the complaint "collectively" as "Canal Wood." (Compl. p. 1).

[5] Plaintiffs do not specify in the complaint to whom they submitted claims for severance benefits. The Plan states that "[i]n the event of a claim by any person for any benefit under the Plan, . . . the claimant shall present the reason for his or her claim in writing to the Plan Administrator." (Plan § 5.4). The Plan Administrator is defined as "the Senior Vice President of Human Resources of the Company." (Id. § 1.11).

# COURT'S DISCUSSION

A.     Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.     Analysis

1.     Documents outside pleadings

The parties raise an issue whether the court should consider documents attached to the instant motions and opposition thereto in deciding the motions.  For the following reasons, the court declines to consider them.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(c). In that event, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id.

 "Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge the document's authenticity.'" Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d

597, 606-07 (4th Cir. 2015) (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir.2004)).

The Fourth Circuit has "recognized a narrow exception to this standard, under which courts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." Id. at 607. "Under Federal Rule of Evidence 201 courts at any stage of a proceeding may 'judicially notice a fact that is not subject to reasonable dispute,' provided that the fact is 'generally known within the court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Id. (quoting Fed. R. Evid. 201(b)). "Nevertheless, when a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs." Id. "Moreover, the determination whether a fact properly is considered under this exception depends on the manner in which a court uses this information." Id.

Thus, availability of a document as a public filing or record is not determinative on whether the court should consider it or its contents as an undisputed fact for purposes of a motion to dismiss. See id.; see, e.g., Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013) (holding that district court erred in considering statements made in public hearing, "impermissibly reaching outside the pleadings to make findings of fact"); Humane Soc'y of the United States v. Hanor Co. of Wisconsin, LLC, No. 4:15-CV-109-FL, 2016 WL 3435192, at *3–4 (E.D.N.C. June 17, 2016) (declining to consider on motion to dismiss through judicial notice multiple documents "originat[ing] from a government entity"); cf. Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (taking judicial notice of specific facts on voting-age statistics, which facts were publically disseminated by the Virginia Division of Legislative Services website, and which the court referred

to as "items of public record").

Here, none of the documents attached to the motions to dismiss or the opposition thereto are "integral to and explicitly relied on in the complaint," <u>Zak</u>, 780 F.3d at 606. Defendants Canal Wood, LLC, and Canal Chip, LLC, nonetheless, urge the court to consider the NC Chip APA because the complaint alleges Canal Wood, LLC, acquired the assets of non-Party North Carolina Chip Company on April 30, 2001, the date of the NC Chip APA. (Compl. ¶ 25). Thus, they argue, the NC Chip APA is "the operative, controlling document under which Plaintiffs, Plan participants, became employed by Canal Wood, LLC. . . ." (Mem. (DE 34) at 5). While the court does not foreclose consideration of the NC Chip APA at a future juncture, the court does not consider it in this instance because plaintiffs do not explicitly rely upon the NC Chip APA in the complaint, and because consideration of it is not necessary to the court's decision herein.

Defendants also urge the court to take judicial notice of corporate filings available in the public record, including articles of merger and an IRS form pertaining to ERISA benefits. Under the circumstances of the instant motions, however, taking judicial notice of documents attached to the motions to establish the truth of their contents or other statements therein is not warranted. While the court may take judicial notice of the fact of the filing of the documents in the public record, it is premature at this juncture to conclude, regarding their contents and all statements therein, that their "accuracy cannot reasonably be questioned." <u>Zak</u>, 780 F.3d at 607 (quoting Fed. R. Evid. 201(b)). In any event, where the documents are not necessary for the instant decision, the court declines to consider them.

    2.     Failure to State a Claim

Defendants argue that plaintiffs' claim for and related to benefits must be dismissed because

the Plan provides under the circumstances alleged that plaintiffs shall receive no benefits under the Plan. Defendants also argue that plaintiffs' claims for breach of fiduciary duty and for equitable relief must be dismissed on several grounds. The court addresses each claim in turn.

a.    Claim for benefits

As noted above, plaintiffs assert a claim "to recover benefits due, enforce their rights to benefits, and clarify their rights to benefits under the Plan." (Compl. ¶ 1; see Compl. ¶¶ 78-79 & p. 19). ERISA provides a cause of action by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

"The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." Lockhart v. United Mine Workers of America 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir.1993). "This Court applies the federal common law of contracts to interpret ERISA plans." Ret. Comm. of DAK Americas LLC v. Brewer, 867 F.3d 471, 480 (4th Cir. 2017). "One of the primary functions of ERISA is to ensure the integrity of written, bargained-for benefit plans," and "[t]o satisfy this objective, the plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." Id. at 481 (quotations omitted).

Here, the Plan provides that in the event of the "Sale of the Employer" as defined in Section 2.4, "benefits *shall not be paid*" in the case of any Eligible Employee who is "offered any comparable position by the purchaser or surviving business . . . where the workplace is not changed." (Plan § 2.4) (emphasis added). In turn, "'Sale of the Employer' means a sale of all or part of the employer by which the Eligible Employee is employed, or any facility thereof in which the Eligible Employee works, whether by the sale of stock or assets, as well as a merger or

consolidation of all or part of the employer in which the <u>Eligible Employee</u> works with another corporation." (<u>Id.</u>).

The facts alleged in the complaint fall squarely within the scope of this "<u>Sale of the Employer</u>" exclusion of benefits. Plaintiffs allege that up to, and at the time of, adoption of the Plan, they were "employed at NC Chip Mill and paid by Canal Industries, Inc." (Compl. ¶ 12). Under the Plan, they were "eligible employees in the Canal Family of Companies." (<u>Id.</u> ¶ 15). On or about April 30, 2001, defendant Canal Wood, LLC "acquired the assets of the North Carolina Chip Company," (<u>id.</u> ¶ 25), which is one of the entities listed as a member of the "Canal Family of Companies" as defined in Section 1.2 of the Plan. According to plaintiffs, upon that corporate acquisition, defendant Canal Wood, LLC, "offered employment to and hired employees who are Participants in the Plan, including Plaintiffs." (Compl. ¶ 25). From that point onward, "they were paid by 'Canal Wood' rather than by 'Canal Industries,'" but they continued working at the NC Chip Mill. (<u>Id.</u> ¶¶ 28, 30).

In this manner, all the requirements of the Section 2.4 exclusion are met. Prior to April 2001, they were paid by Canal Industries, Inc., employees of the Canal Family of Companies, and working at the NC Chip Mill. A "Sale of the Employer" took place "by the sale of stock or assets" or "merger or consolidation of all or part of the employer," (Plan § 2.4), in the form of the sale of North Carolina Chip Company to defendant Canal Wood, LLC, which "offered employment to and hired" plaintiffs. (Compl. ¶ 25). Plaintiffs held a "comparable position" at NC Chip Mill and the "workplace [was] not changed." (Plan § 2.4).

In sum, because all the requirements of the Section 2.4 exclusion are met, "benefits shall not be paid" in accordance with the Plan. (Plan § 2.4). Thus, where the Plan does not provide for

payment of benefits to plaintiffs on the basis of the facts alleged, plaintiffs' claim "to recover benefits due, enforce their rights to benefits, and clarify their rights to benefits under the Plan," pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), must be denied as a matter of law.

Plaintiffs suggest they may circumvent the plain language of the Section 2.4 exclusion for several reasons, each of which are unavailing. Plaintiffs argue, for example, that application of Section 2.4 to preclude severance claims for plaintiffs "is completely at odds with [Canal Wood's] representation to employees that 'no changes were being made as a result of restructuring, that it was only a company name change, and that all operations and employment would continue as before at the same location and they would receive the same pay and benefits.'" (Pls' Mem. (DE 30) at 17 (quoting Compl. ¶ 27)). Plaintiffs suggest that the alleged statement that they would receive the same "benefits" should preclude defendants from now asserting applicability of the Section 2.4 exclusion.

It is well-established, however, that "a plaintiff may not bring an equitable estoppel claim that would result in a payment of benefits that would be inconsistent with the written plan, or would, as a practical matter, result in an amendment or modification of a plan." Ret. Comm. of DAK, 867 F.3d at 485 (quoting Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 956 (9th Cir. 2014)). Where Section 2.4 of the Plan plainly precludes an award of benefits upon the asset acquisition by defendant Canal Wood, LLC, plaintiffs cannot now rely upon a representation contrary to the terms of the Plan to preclude application of Section 2.4. See id. ("[E]stoppel cannot be used to require the payment of benefits that conflicts with the express, written terms of the Plan."). The court addresses further below plaintiffs' argument that the same representation constitutes a breach of fiduciary duty or other basis for equitable relief apart from a claim for benefits under the Plan.

Plaintiffs also suggest a shared or overlapping corporate identity between defendants and Canal Industries, Inc., and other predecessor or affiliated corporate entities, including members of the Canal Family of Companies, which precludes application of Section 2.4 or requires a finding that defendant Canal Wood, LLC, adopted the Plan. Plaintiffs allege, for example, that defendant Canal Wood, LLC, is "the successor in interest of Canal Wood Corporation and Canal Industries Inc. and a Plan Sponsor and fiduciary for the Plan."  (Compl. ¶ 9).  Plaintiffs also refer collectively to all defendants as "Canal Wood," which is not itself the name of any one corporate entity. (Compl. p. 1).  Plaintiffs suggest, in this regard, a disregard of corporate formalities or application of an alter ego theory of liability.  Plaintiffs' suggestion fails, however, because plaintiffs have not alleged sufficient facts to give rise to a plausible inference of alter ego liability or disregard of corporate formalities in a manner material to the award of benefits under the Plan.

As a general rule, in the context of ERISA, "piercing the corporate veil" or "alter ego and mere instrumentality" theories may provide a basis for imposing liability on one corporation for the actions of another. Peacock v. Thomas, 516 U.S. 349, 354 (1996) ("Piercing the corporate veil is not itself an independent ERISA cause of action, but rather is a means of imposing liability on an underlying cause of action.") (quotations omitted); Varity Corp. v. Howe, 516 U.S. 489, 492 (1996) ("Since the lower courts found that Varity and Massey-Ferguson were 'alter egos,' we shall refer to them interchangeably.");  Keffer v. H.K. Porter Co., 872 F.2d 60, 65 (4th Cir. 1989) ("[B]ecause Connors was at all relevant times acting as Porter's agent, alter ego and mere instrumentality, it was appropriate to pierce the corporate veil and hold Porter liable for the continuation of the Retirees' benefits.") (quotations omitted).

"Whether the corporate veil should be pierced is necessarily a factual inquiry to be conducted

on a case-by-case basis." <u>Keffer</u>, 872 F.2d at 65.

> Among other factors, we have identified the following as suggesting the propriety of piercing the veil: gross undercapitalization of the subservient corporation; failure to observe corporate formalities; nonpayment of dividends; siphoning of the corporation's funds by the dominant corporation; non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders.

<u>Id.</u>

Plaintiffs' allegations in the complaint are insufficient to invoke piercing the corporate veil or alter ego liability. Plaintiffs' reference to defendant Canal Wood, LLC, and defendant Canal Chip, LLC, as "the successor in interest" to, among others, Canal Industries, Inc., and reference to defendants collectively as "Canal Wood," (Compl. ¶ 9 & p.1), is not sufficient to treat them as the same entity for purposes of liability or treatment in accordance with the Plan. The Plan precisely defines "Canal Family of Companies" as including Canal Industries, Inc., but it does not mention defendant Canal Wood, LLC, nor defendant Canal Chip, LLC. (Plan § 1.2). Indeed, plaintiffs suggest through allegations in the complaint that defendant Canal Wood, LLC, was not in existence at the time of adoption of the Plan. (Compl. ¶ 24). Plaintiffs also do not include any allegation that defendant Canal Wood, LLC, or Canal Chip, LLC, later adopted the plan, or otherwise took action to be treated "as a single employer" in the "Canal Family of Companies" defined in Section 1.2 of the Plan.[6]

Plaintiffs urge the court to apply a different standard of successor liability, quoting <u>Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.</u>, 59

---

[6] In addition, with respect to Canal Chip, LLC, and Canal Holdings, LLC, plaintiffs do not allege facts permitting an inference that they were employees of such entities "immediately prior to [their] <u>Severance of Employment</u>" (Plan § 1.6), such that they could be entitled to benefits as "<u>Eligible Employees</u>" of those entities under the Plan (Plan § 2.1).

F.3d 48, 49 (7th Cir. 1995), for the proposition that "this theory allows lawsuits against even a genuinely distinct purchaser of a business if (1) the successor had notice of the claim before the acquisition; and (2) there was substantial continuity in the operation of the business before and after the sale." Plaintiffs do not allege here, however, that any "successor had *notice of the claim before the acquisition[s]*" that are alleged in the complaint. Id. (emphasis added). Indeed, plaintiffs allegedly submitted their "claims for severance benefits" on or after September 1, 2016, approximately fifteen years after the corporate acquisitions alleged in the complaint. (Compl. ¶¶ 24-25, 29, 31).

Plaintiffs also suggest that, in any event, they meet the standard for piercing the corporate veil or alter ego liability. They assert in their brief that an undefined group of "Management Owners," "who were actively involved in managing and operating the business of Canal Wood Corporation, Canal Industries, Inc., and North Carolina Chip Company, formed Canal Wood, LLC to purchase the assets of those companies they managed and operated." (Pls' Mem. (DE 30) at 23). Here, however, plaintiffs are not quoting from the complaint, but rather are relying upon materials outside the pleadings. The complaint contains insufficient facts to permit plaintiffs to proceed on such theories of liability, particularly in the context of the instant Plan which carefully defines corporate entities and includes a broad exclusion in the event of "Sale of the Employer." (Plan § 2.4).

Plaintiffs also argue that provisions in the plan defining "Severance Date," "Severance of Employment," and "Year[s] of Service" "do not inform Participants they will be disqualified from ever receiving severance benefits upon continued employment with the Canal Family [of] Companies," particularly where the Plan can only be terminated "by action of the Plan

Administrator." (Pls' Mem. (DE 30) at 19 (quoting Plan §§ 1.13, 6.2). This argument, however, is premised upon the assumption that plaintiffs continued employment with the "Canal Family of Companies," after the April 2001 acquisition by defendant Canal Wood, LLC. Where plaintiffs have not alleged any facts tending to show that defendant Canal Wood, LLC, falls under the definition of the "Canal Family of Companies" or that defendant Canal Wood, LLC, "adopt[ed] this Plan" as a "Participating Employer," the plain language of the "Sale of the Employer" exclusion in Section 2.4 applies. (See Plan §§ 1.2, 1.6(a), 1.10, 2.4).

In sum, plaintiffs fail to state a claim for or related to benefits under the Plan. Therefore, plaintiffs' first claim under 29 U.S.C. § 1132(a)(1)(B) must be dismissed without prejudice.[7]

> b. Claim for breach of fiduciary duties

Plaintiffs assert a claim for breach of fiduciary duties, under ERISA, 29 U.S.C. § 1132(a)(2), which provides a cause of action "for appropriate relief under" 29 U.S.C. § 1109. In turn, § 1109 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable *to make good to such plan* any losses *to the plan* resulting from each such breach, and to *restore to such plan any profits* of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C.A. § 1109(a) (emphasis added). Because of the emphasized text, the Supreme Court has

---

[7] Because plaintiffs fail to state a claim under § 1132(a)(1)(B), the court does not reach defendant Canal Holding, LLC's argument that plaintiffs failed to exhaust administrative remedies under the Plan. While the court does not determinatively address exhaustion here, the court notes that, while defendant Canal Holding, LLC, states that plaintiffs have not pursued "any of the mandatory appeals procedures for denied claims," (Mem. (DE 24) at 20), it is not clear from Plan documents or defendants' argument to whom such appeals should have been or should be addressed. The court also does not reach additional arguments and case law cited by defendants in their briefs where those arguments and case law are not consistent with the court's analysis and authorities cited herein.

interpreted these provisions as providing a cause of action by a beneficiary only on behalf of a benefit plan, and not on behalf of the beneficiary. See Variety Corp., 516 U.S. at 515 (holding that § 1132(a)(2) "does not provide a remedy for individual beneficiaries").

Here, plaintiffs seek remedies for themselves and other similarly situated beneficiaries of the Plan for defendants' asserted breaches of fiduciary duties. In support of their claim they state "Plaintiffs and other Participants and their beneficiaries who qualify for benefits under the terms of the Plan have suffered loss of entitlement to severance benefits." (Compl. ¶ 84) (emphasis added). As relief, they seek to have defendants "notify employees of their rights under the Plan, to appoint a Plan Administrator to receive and administer claims under the Plan, to facilitate submission of claims by its Participants and their beneficiaries, to administer and *pay severance benefits in accordance with the terms of the Plan, and to make good the severance benefits offered to Participants under the terms of the Plan*." (Id. ¶ 85) (emphasis added).

Accordingly, plaintiffs do not state a claim for relief on behalf of the Plan in their second claim under § 1132(a)(2). While plaintiffs assert they should be entitled to assert a claim under § 1132(a)(2) "on behalf of all Plan participants," (Pls' Mem. (DE 30) at 12), this argument is self-defeating. Even if they are asserting a claim on behalf of all Plan participants (in addition to claims on their own behalf), a § 1132(a)(2) claim must remedy in some respect "plan injuries." LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256 (2008). Larue, cited by plaintiffs, does not cover their claims here, where it holds only that § 1132(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Id. Plaintiffs do not allege here an impairment of the value of plan assets.

In sum, plaintiffs' claim under § 1132(a)(2) must be dismissed without prejudice for failure

to state a claim upon which relief can be granted.

c. Equitable Relief

In their third claim, plaintiffs seek "to enjoin further violations and obtain other appropriate equitable relief," pursuant to ERISA, 29 U.S.C. §1132(a)(3). (Compl. ¶¶ 1, 87-88).

"[This] provision creates a "catchall" which 'acts as a safety net, offering appropriate equitable relief for injuries caused by violations that § 1132 does not elsewhere adequately remedy.'" Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 105 (4th Cir. 2006) (quoting Varity, 516 U.S. at 512). However, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. (quoting Varity, 516 U.S. at 515). In such case, a claim under § 1132(a)(3) must be dismissed as a matter of law. Id. at 102-03.

Here, based upon the allegations and claims in the complaint, plaintiffs seek relief ultimately in the form of severance benefits. Indeed, as in Korotynska, their claims "originated as such," id. at 105, where they allege that "[f]ollowing their termination, Plaintiffs submitted claims for severance benefits" and defendants "refused and continu[e] to refuse to consider or administer Plaintiffs['] claims for severance benefits under the Plan." (Compl. ¶¶ 31, 32). Also, as in Korotynska, plaintiffs' injuries are redressable under § 1132(a)(1)(B), where such provision allows a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 474 F.3d at 106 (quoting 29 U.S.C. § 1132(a)(1)(B)).

Plaintiffs suggest that they seek broader relief for broader injuries, asserting that they "do not seek judicial review of a benefits determination," but instead "remedial relief" in the form of a

"declaration of the existence of a Plan, clarification of their rights under the Plan, a directive to Canal Wood to identify all Participants and beneficiaries and to notify them of their rights to submit claims under the Plan, and the appointment of an independent, substitute Plan Administrator to administer those claims." (Pls' Mem. (DE 30) at 11). However, all this relief is premised upon "the existence of a Plan," and "clarification of their rights under the Plan," which relief falls under the scope of § 1132(a)(1)(B), "to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." If plaintiffs are correct, as they assert, that they have a right to benefits under the Plan, but defendants refuse to function properly as plan administrators, then the court could order relief to enforce the terms of the Plan. There is, however, no need to assert an independent claim separate from § 1132(a)(1)(B).

Comparison to <u>Varity</u>, upon which plaintiffs' rely in support of their claim is instructive. There, "[a] group of beneficiaries of a firm's employee welfare benefit plan . . . sued their plan's administrator, who was also their employer," claiming "that the administrator, *through trickery, led them to withdraw from the plan* and to forfeit their benefits." <u>Varity</u>, 516 U.S. at 491-92 (emphasis added). They sought, "among other things, an order that, in essence, would *reinstate each of them as a participant in the employer's ERISA plan*." <u>Id.</u> at 492 (emphasis added). In particular, the plaintiffs' employer decided to transfer unprofitable divisions into a new subsidiary, "induc[e] the failing divisions' employees to switch employers and thereby voluntarily release [the employer] from its obligation to provide them benefits," including medical and nonpension benefits, and then allow the new subsidiary to fail without impacting more profitable divisions. <u>Id.</u> at 493. "To persuade the employees of the failing divisions to accept the change of employer and benefit plan," the employer assured them of the new subsidiary's "likely financial viability, and the security of

20

their employee benefits," all while the employer "*knew*" the new subsidiary "*was insolvent from the day of its creation* and that *it hid* a $46 million negative net worth." Id. at 494 (emphasis added). When the new subsidiary ended in receivership, employees thereof "lost their nonpension benefits" and sued "seeking the benefits they would have been owed *under their old, [employer] plan*, had they not transferred to" the new subsidiary. Id. (emphasis added).

The Supreme Court upheld the relief sought under § 1132(a)(3), noting they could not proceed under § 1132(a)(1)(B), "because they were no longer members of the [employer] plan and, therefore, had no 'benefits due them under the terms of the plan.'" Id. (quoting § 1132(a)(1)(B)). The court also affirmed that the catchall § 1132(a)(3) was "broad enough to cover individual relief for breach of a fiduciary obligation, in contrast to § 1132(a)(2)," and the court held that the "intentional misrepresentation" and "knowingly and significantly . . . deceiving a plan's beneficiaries" qualified as a breach of fiduciary duty. Id. at 506 & 509 (quotations omitted).

The instant case is distinguishable from Variety in several key respects. First, plaintiffs do not seek reinstatement under a plan from which they have withdrawn; rather they seek to enforce the terms of the Plan in its current form. (See, e.g., Compl. ¶ 78). Second, plaintiffs do not allege that defendants, through trickery, induced them to accept the current Plan; indeed they do not allege in the complaint that defendants made any communications to plaintiffs at the time the Plan sought to be enforced was adopted in May 2000. (See Compl. ¶ 15).

Third, plaintiffs do not allege sufficient facts to support a claim of an "intentional misrepresentation" on the part of defendants. Varity, 516 U.S. at 506. Here plaintiffs suggest that defendants misrepresented to them in April 2001 that their "benefits" would continue. (See Compl. ¶ 27). As an initial matter, plaintiffs have not alleged in the complaint who made alleged

misrepresentations to them, when they were made, nor the actual contents of the statements about "benefits." (Id.). While plaintiffs point to additional documentation in their brief, (see, e.g., Pls' Mem. (DE 30) at 16), the court does not consider such documentation upon the instant motion to dismiss. Moreover, the representations described about continuation of "benefits" was a matter governed by the plain language of the Plan, not an issue of fact in the unique purview only of the employer like the misrepresentation in Varity. 516 U.S. at 494; see also Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 380 (4th Cir. 2001) (holding that a fiduciary "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary *which he knows the beneficiary does not know*") (emphasis added).

In sum, plaintiffs fail to allege sufficient facts to support a claim for equitable relief under 29 U.S.C. § 1132(a)(3). Therefore, plaintiffs' third claim must be dismissed without prejudice.

3.     Dismissal and opportunity to amend

Defendants seek dismissal of all claims with prejudice. However, "unless the grounds for dismissal clearly indicate that no amendment in the complaint could cure the defects in the plaintiff's case," then dismissal without prejudice is required with an opportunity for plaintiff to seek leave to amend. See Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 623 (4th Cir. 2015); see, e.g., Hancock v. Americo Fin. Life & Annuity Ins. Co., 723 F. App'x 241, 242 (4th Cir. 2018) (dismissing appeal and remanding case for amendment of complaint, where district court dismissed claims for failure to plead sufficient facts in the complaint).

Here, plaintiff's claims must be dismissed for failure to plead sufficient facts supporting the claims. As such, dismissal is without prejudice to refiling, moving for leave to amend, or "stand[ing] on the complaint" as the circumstances may dictate. Goode, 807 F.3d at 629.

Accordingly, in the event plaintiffs wish to pursue their claims in this case, they must, within **21 days** of the date of this order, file a motion for leave to amend the complaint, accompanied by 1) a proposed amended complaint, 2) a redline showing differences between the proposed amended complaint and the original complaint, and 3) a memorandum in support thereof. In the event plaintiffs do not seek leave to amend in this manner in the time period specified, the clerk without further order of this court shall enter judgment closing the case based upon this order.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss (DE 23, 25) are GRANTED. Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs are allowed **21 days** from the date of this order to file a motion for leave to amend complaint, in accordance with the requirements set forth herein. In the event plaintiffs do not seek leave to amend in this manner in the time period specified, the clerk without further order of this court shall enter judgment closing the case based upon this order.

SO ORDERED, this the 26th day of March, 2019.

LOUISE W. FLANAGAN
United States District Judge